Filed 12/2/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| KWAN SOFTWARE ENGINEERING, INC., et al., | H042715 (Santa Clara County Super. Ct. No. 109CV149780) |
| Plaintiffs and Respondents, | |
| v. | |
| THOMAS HENNINGS et al., | |
| Defendants and Appellants; | |
| GRELLAS SHAH LLP et al., | |
| Objectors and Respondents. | |
| KWAN SOFTWARE ENGINEERING, INC., et al., | H043215 |
| Plaintiffs and Cross-defendants, | |
| v. | |
| FORAY TECHNOLOGIES, LLC, et al., | |
| Defendants, Cross-complainants and Appellants; | |
| GRELLAS SHAH LLP et al., | |
| Objectors and Respondents. | |

Plaintiff Kwan Software Engineering, Inc., doing business as VeriPic, Inc. (VeriPic), and its president and chief executive officer, John Kwan, (collectively, plaintiffs) sued a business competitor, defendant Foray Technologies, LLC (Foray) and certain individuals affiliated with Foray, including Foray's president, Thomas Hennings (collectively, defendants). Prior to trial, defendants Foray and Hennings moved for sanctions against VeriPic, Kwan, and plaintiffs' former counsel (the law firm Grellas Shah LLP). Among other sanctions, Foray and Hennings requested monetary sanctions under Code of Civil Procedure section 2023.030, subdivision (a),[1] for plaintiffs' misuse of the discovery process.

In the course of litigation on Foray's and Hennings's sanctions request, the trial court sua sponte issued an order to show cause ordering plaintiffs and plaintiffs' former counsel to show why sanctions, including monetary, evidentiary, and terminating sanctions, should not issue for (in the court's words) plaintiffs' "egregious and deliberate" "litigation abuse" in their filings with the court. All the defendants subsequently moved for sanctions against plaintiffs and plaintiffs' former counsel (Grellas Shah LLP and two of the firm's partners) and renewed the request for monetary sanctions under section 2023.030. The trial court ultimately ordered various sanctions against Kwan and VeriPic, including dismissal with prejudice of VeriPic's remaining claims, for plaintiffs' fraud on the court. However, the trial court denied defendants' motion for monetary sanctions against plaintiffs and plaintiffs' former counsel for misuse of the discovery process.

Defendants argue on appeal that the trial court erred in denying their request for monetary sanctions against VeriPic, Kwan, and plaintiffs' former counsel. For the reasons explained below, we conclude the trial court abused its discretion in denying defendants' request for monetary sanctions against VeriPic and Kwan. We therefore

---

[1] Unspecified statutory references are to the Code of Civil Procedure.

reverse the judgment and remand the matter to the trial court with directions that it determine the amount of reasonable expenses, including attorney fees, incurred by defendants as a result of VeriPic's and Kwan's misuse of the discovery process (§ 2023.030, subd. (a)) and order VeriPic and Kwan to pay that amount to defendants as monetary sanctions for abuse of the discovery process. However, we decide that defendants have not carried their burden on appeal of showing error by the trial court in declining to impose sanctions on plaintiffs' former lawyers and affirm that portion of the order.

## I. FACTS AND PROCEDURAL BACKGROUND

A. *Underlying Litigation*

VeriPic and Foray provide digital asset management software to law enforcement agencies and are business competitors. In August 2009, VeriPic brought a lawsuit in Santa Clara County Superior Court against Foray alleging tort claims based on Foray's systematic disparagement of VeriPic's business. Kwan, the president and chief executive officer of VeriPic, later joined the lawsuit as a co-plaintiff.

VeriPic's and Kwan's operative complaint (the seventh amended complaint) named as defendants Foray and five individuals affiliated with Foray—David Witzke, Michal Temple, Donnie McFall, Thomas Hennings, and Lynn Slaughter.[2]

The complaint alleged 13 causes of action, including for libel, slander, false advertising, and unfair competition, and sought damages of at least $255 million. Plaintiffs' claims generally centered on allegations that defendants had disparaged VeriPic's products and falsely told others that VeriPic engaged in unethical and illegal business practices commonly described as cybersquatting. For example, the complaint alleged certain defendants wrongfully sent a letter that implied plaintiffs had registered

---

[2] Plaintiffs later dismissed McFall from the lawsuit with prejudice, and he is not a party in these appeals.

the domain name of "foray.ca" to intentionally and deceptively direct internet user traffic from foray.ca to VeriPic's website.

Approximately one year after the lawsuit began, in August 2010, Foray filed a cross-complaint against VeriPic and Kwan. Foray's operative cross-complaint, filed in 2012, asserted nine causes of action against VeriPic and Kwan, including claims of cybersquatting, trade libel, trademark infringement, and unfair business practices based in part on their wrongful conduct in operating the domain name of foray.ca and wrongfully diverting Internet users, including actual and potential customers of Foray, to VeriPic's own website.

The parties engaged in pretrial litigation for over five years. By December 2014, the trial court had held 175 hearings in the case. We describe below only the procedural history relevant to this appeal, which centers on the trial court's July 9, 2015 order that imposed a variety of sanctions against Kwan and VeriPic but denied defendants' request for monetary sanctions pursuant to section 2023.030, subdivision (a), for misuse of the discovery process.

B. *Discovery*

In February 2010, VeriPic responded to special interrogatories propounded by Foray, including an interrogatory that asked whether users who entered the domain name of foray.ca would be "automatically diverted to YOUR website" (bold omitted). In its response, verified by Kwan, VeriPic stated in pertinent part that VeriPic owned the foray.ca domain but that it "did nothing with this web domain," the domain was "parked," and its "internet service pointed the domain to Responding Party's VeriPic.com website as a matter of routine." In a similar vein, and in supplemental form interrogatory responses that Kwan verified in March 2010, VeriPic denied that it intended to divert users to its own website when it managed or used the domain name foray.ca; it claimed that its Internet service provider "routinely points registered domains to the main website on the account without requests from the client."

4

In January 2012, Kwan testified as the designated corporate representative of VeriPic. Kwan stated that he was the person who had registered the domain name of foray.ca for VeriPic, along with certain other domain names. Kwan's understanding was that when a user typed in that foray.ca domain name the user would receive a message along the lines of " 'this page is not found.' " Kwan registered certain domain names to "poke fun" at VeriPic's competitors in the computer industry. He denied directing Internet traffic to a VeriPic website; he maintained VeriPic's Internet service provider had set up that direction of traffic on its own as part of the provider's standard policy.

VeriPic's Internet service provider during the pertinent time period was BigBiz Internet Services (BigBiz). In February 2012, David Lai, the former president of BigBiz, appeared for his first deposition. We discuss the David Lai depositions in further detail further below in the context of defendants' claims for sanctions against plaintiffs' former counsel.

In September 2013, Henry Lai, David Lai's brother and then-president of BigBiz, was deposed. In connection with his deposition, Henry Lai produced numerous e-mails from BigBiz's records that contradicted portions of Kwan's deposition testimony and suggested Kwan had engaged in spoliation of evidence. The e-mails included one dated August 20, 2008, from Kwan to both David and Henry Lai directing them to obtain certain domains including foray.ca and to "point them to VeriPic.com." The September 2013 document production also included two e-mails from 2010 that had not been previously produced and that intimated that plaintiffs' lawyers had instructed the destruction or alteration of evidence related to the ongoing litigation.

In particular, a May 4, 2010 e-mail from Kwan to Henry Lai at BigBiz stated: " 'As you know we are in the middle of a law suit [*sic*]. One of the central parts of the law suit [*sic*] is that we are suing the other company for damaging our business and they are suing us for cybersquatting on domains. [¶] Our lawyers have instructed us to get rid of certain domains… [a]nd with your help, we got rid of most of them.' " In another

5

e mail also apparently dated May 4, 2010, Kwan wrote to Henry Lai that "[t]he lawyer is unhappy" about the 2011 expiration date for certain domains and that "[t]hey want to see VeriPic, Inc. removed from the owner section of the .uk domains and to have the expiration date put into 2009 or show expired." None of the e-mails referencing spoliation of evidence were to or from lawyers at Grellas Shah LLP, and the e-mails did not reference any lawyers by name.

On October 3, 2013, defendants' counsel sent a letter to plaintiffs' counsel, Dhaivat Shah, regarding the two May 2010 e-mails discussed above and requesting an explanation for why they had not been previously produced.

The next day, Kwan and VeriPic requested dismissal of 8 of the 13 causes of action in their complaint against defendants. These dismissed claims included VeriPic's causes of action for trade libel and interference with prospective economic advantage and VeriPic's and Kwan's false-light claim based on defamatory statements defendants allegedly made to the public, existing customers, and potential clients that VeriPic was " 'unethical,' 'deceptive,' and 'unscrupulous.' " Following this dismissal, five causes of action remained in plaintiffs' complaint: two false advertising claims asserted by VeriPic only, two libel claims asserted by both Kwan and VeriPic based on written defamatory statements, including by e-mail, that VeriPic "employees['] business practices that are 'unethical,' 'deceptive,' and 'unscrupulous,' " and a claim for unfair competition asserted by VeriPic only.

C. *Defendants' Motion for Sanctions and Trial Court's Order to Show Cause*

On November 25, 2013, Foray and Hennings (Foray's president) moved for terminating and monetary sanctions against Kwan and VeriPic, pursuant to sections 128.7 and 2023.030, based on plaintiffs' and plaintiffs' counsel's improper litigation conduct. Foray and Hennings alleged that plaintiffs had engaged in extensive litigation misconduct, including destroying and hiding evidence, filing false declarations with the

6

court, and pursuing meritless claims. Pursuant to section 2023.030, defendants sought monetary and terminating sanctions against Kwan's and VeriPic's complaint.

Foray and Hennings moved for the trial court to impose monetary sanctions as reimbursement of the substantial attorney fees and expenses they had incurred in defending against what they described as Kwan's defamation claims. Supporting their request for sanctions, Foray and Hennings submitted the declaration of their counsel, James S. Greenan (Greenan Declaration). The Greenan Declaration attached as exhibits, numerous documents, including discovery requests and responses, excerpts of deposition transcripts (including from Kwan's deposition), multiple declarations filed by Kwan in the litigation, and the e-mails referenced above.

Addressing costs and expenses incurred, the Greenan Declaration stated that Foray and Hennings had "expended more than three million dollars to defend against VeriPic's claims" to date (presumably, as of November 1, 2013, the date of the Greenan declaration). The Greenan Declaration further asserted that Kwan's misconduct required Foray to spend "four years defending itself against nine defamation-based claims asserted by Kwan" and detailed costs including that Foray "had to procure 55 declarations" in support of its motions for summary judgment. It further noted Foray and Hennings had incurred expenses amounting to $280,000 from vendors to assist in review and production of electronic documents. The Greenan Declaration did not attach any exhibits related to its costs and expenses but stated that "[a]n itemized accounting of costs and fees will be submitted as a supplement to this declaration if the Court so requests."

On March 21, 2014, the trial court held an evidentiary hearing on Foray and Hennings's motion for sanctions. Because of a possible conflict of interest between Grellas Shah LLP (plaintiffs' counsel) and Grellas Shah LLP's clients VeriPic and Kwan, VeriPic appeared at the hearing represented by different counsel on a limited scope basis. Kwan also appeared and was represented by his own counsel on a limited scope basis. Kwan asserted the Fifth Amendment privilege against self-incrimination to all questions

7

directed at him involving issues in the case, including about the May 4, 2010 e-mail he sent that referred to instructions from unnamed lawyers to "get rid of certain domains."

Plaintiffs' counsel Dhaivat Shah and George Grellas appeared on behalf of themselves and the law firm Grellas Shah LLP, and each testified at the March 21, 2014 hearing.[3] Counsel for Kwan objected to numerous questions directed at Dhaivat Shah and George Grellas on various grounds, including Kwan's Fifth Amendment privilege. The trial court sustained a number of those objections.

During the March 21, 2014 hearing, Foray and Hennings also argued that the trial court should use its inherent authority (in addition to its statutory authority under section 128.7 and the Civil Discovery Act) to issue sanctions, citing to *Slesinger v. Walt Disney Co.* (2007) 155 Cal.App.4th 736, 740 (*Slesinger*). After hearing further argument from counsel, the trial court took the sanctions motion under submission and continued the trial date. The trial court stated it would issue its decision "for the first instance" by the next hearing, which it scheduled for May 2, 2014. The court stated that if it decided to set a "sanctions hearing" it would occur after May 2.

On May 2, 2014, instead of issuing its ruling on Foray's and Hennings's sanctions motion, the trial court sua sponte issued an order to show cause (OSC) that "expand[ed] the scope of what was presented in motions by the Defendants." The trial court's OSC ran to nearly 60 pages and ordered Kwan, VeriPic, and plaintiffs' counsel to "show cause as to why monetary, issue, evidentiary and terminating sanctions should not be issued against them pursuant to Code of Civil Procedure section 128.7, subdivisions (b)(1)-(3), the Discovery Act, Business & Professions Code sections 6068[,] subdivisions (c) & (d), and the Court's inherent authority to properly administer justice and to preserve the Court's integrity."

---

[3] At the time of the March 2014 hearing, Grellas Shah LLP was still counsel of record for plaintiffs. However, by June 2014, VeriPic and Kwan had each substituted in new counsel of record.

8

The OSC quoted in extensive detail e-mails Kwan wrote to BigBiz in 2008 and 2009 that contradicted his statements in court filings, including submitted declarations sworn under the penalty of perjury, as well as the e-mails Kwan sent in May 2010 to BigBiz referencing instructions from lawyers to get rid of certain domains. The OSC also quoted a declaration submitted by Kwan to the court, which attached as an exhibit a letter dated March 12, 2010, that Kwan attested corroborated his testimony that VeriPic's registration of the Foray domain name was proper and ethical. According to Kwan's declaration, that March 12, 2010 letter was a letter he received from David Lai of BigBiz that stated BigBiz had done a trademark search on the domain name of www.Foray.ca and concluded the registration of that domain was proper.

Ten days after the OSC issued, on May 12, 2014, the parties appeared for a hearing on the OSC. Turning to the monetary sanctions in the form of attorney fees, the trial court noted that it understood Foray's and Hennings's request for sanctions to be that "[t]hey want all their money back" and stated "if you think that I should be awarding those, I think you need to brief it in terms of my order to show cause." The trial court stated that it wanted Foray and Hennings to brief the legal issue but not submit declarations setting out the exact amounts requested until it had ruled on the legal issue.

On July 2, 2014, Foray and Hennings (joined by defendants Slaughter, Temple, and Witzke) filed a second motion for sanctions. Defendants referenced the earlier sanctions motion filed in November 2013 and described the focus of the second motion as "Veripic's false discovery responses and false deposition testimony." Defendants asserted that the trial court had the authority to award monetary sanctions pursuant to sections 2023.010 and 2023.030.

In the second sanctions motion, defendants claimed that they had incurred substantial costs as a result of plaintiffs' discovery misconduct, stating that "had VeriPic truthfully responded to discovery and produced their emails instructing Big Biz to register Foray's trade name and direct visitors to Veripic's website, this case would have

9

been over before it started, saving Foray $4 million in litigation costs." Defendants explained that the trial court had instructed them at the May 12 hearing not to file "specific information regarding the amount of attorneys' fees and costs" they had incurred and sought as sanctions. "Consequently, [defendants] will need to submit specific information regarding the amount of attorneys' fees and costs [defendants] incurred before asking for a specific amount as sanctions," but defendants asserted they were "entitled to an [o]rder" that VeriPic and Grellas Shah LLP are liable for sanctions for misuse of discovery "in an amount to be determined by the Court after further briefing."

VeriPic and Kwan opposed the July 2, 2014 motion. Among other arguments in opposition, they contended that shifting the cost of litigation from defendants to VeriPic would be punitive. Plaintiffs' former counsel, Grellas Shah LLP, Dhaivat Shah, and George Grellas separately filed an opposition to the July 2, 2014 motion and argued there was no evidence to support discovery sanctions against them.

On December 12, 2014, the trial court issued an interim order on its OSC and on defendants' sanctions motion. Pursuant to its inherent authority to impose sanctions, the trial court stated in the interim order that it intended to dismiss VeriPic's remaining claims with prejudice.[4] In addition, the trial court intended to order as restitution that Kwan and VeriPic return attorney fees and costs amounting to $83,184.33 that they had received earlier in the litigation in connection with a motion related to California's anti-SLAPP statute and to order defendants to pay the trial court $22,000 for costs incurred by the court.

The trial court stated in the interim order that it did not intend to impose any sanctions on Grellas Shah LLP or on its individual attorneys. The court rested this

---

[4] By this time, plaintiffs' only remaining claims (asserted solely by VeriPic) were the fifth, tenth, and eleventh causes of action. On March 21, 2014, Kwan's counsel represented to the court that Kwan no longer had any personal claims at issue.

10

decision on due process grounds, reasoning that the law firm and its individual attorneys were unable to defend themselves by testifying about communications with their former clients because of Kwan's assertion of the Fifth Amendment privilege at the March 2014 evidentiary hearing. The trial court did not address whether the evidence showed that the attorneys had in fact advised plaintiffs to engage in discovery misconduct. As to defendants' motion for sanctions and for attorney fees, the trial court stated that an order that Kwan and VeriPic pay attorney fees incurred by Foray "could be considered as punishment." Therefore, the court intended to deny defendants' request for monetary sanctions.

During a hearing held on December 12, 2014, on the court's interim order, defendants expressed concern that the order did not award defendants the attorney fees it had requested for "discovery abuse." The trial court commented, "Are you trying to get – the four million dollars I cannot imagine is entirely related to discovery fees." Defendants' counsel responded, "We agree with that, Your Honor. Therefore, we ask permission to submit the evidence on what fees were incurred as a result of abuse of discovery by Mr. Kwan." Co-counsel for defendants added, "If I may, Your Honor. Our argument is essentially *Slesinger*. If with our initial discovery way way back in the beginning of this case the truth had been told instead of the falsehoods, the entire case would have taken a very very very different turn and we would not have incurred four million. Now, there would be an argument about how much we would have incurred, but had the motion been brought with the accurate information that we have today, all of the motion practice that was done would have been very very different. And our first swing is we want it all back and they will respond, well, wait a minute some of this would have been incurred and we will have to concede that."

The trial court stated that it did not think it needed to "revisit" the request for attorney fees when defendants' counsel suggested scheduling an additional motion on attorney fees. The trial court commented that "there may be further opportunities for you

11

to seek your fees" but that "right now we need to focus on getting the case concluded now that this piece of it is nearly wrapped up."

D. *July 9, 2015 Sanctions Order*

On July 9, 2015, the trial court issued its final order on sanctions, which is the order that is the subject of these appeals. With respect to false statements made to the court, the trial court found that the "Kwan emails, quoted in the Court's OSC, demonstrate that Kwan's statements in declarations sworn under penalty of perjury and filed with the Court were false; that Kwan made false statements under oath in declarations submitted to the Court under penalty of perjury; and that Kwan and VeriPic filed multiple verified pleadings that contained false statements of fact." The trial court further found that Kwan and VeriPic committed " 'fraud on the court' " including by pursuing frivolous claims for more than five years and expanding their claims despite knowledge of the falsity of the essence of its allegations.

With respect to discovery, the trial court found in its order that Kwan and VeriPic "took steps to spoliate evidence, in that Kwan and VeriPic took affirmative steps to hide, conceal, and suppress relevant evidence related to its own claims and their defense of affirmative claims by the Defendants." It found that VeriPic's "bad faith misconduct" included the manufacture and spoliation of evidence. It stated that Kwan and VeriPic withheld and attempted to conceal or alter evidence "that would have shown that Kwan's sworn statements filed with the Court, deposition testimony, and the pleadings and claims made in this case were false, and that VeriPic, through Kwan, presented claims that they knew were without evidentiary basis."

Based on its inherent authority to address fraud on the court and citing to *Slesinger*, the trial court dismissed with prejudice VeriPic's remaining claims. Pursuant to its inherent authority, the trial court ordered Kwan and VeriPic to pay $22,000 to the court as a monetary sanction for their fraud on the court. It also ordered that, as a form of

12

restitution, Kwan and VeriPic disgorge $83,184.33 in attorney fees and costs that were previously ordered to be paid to them in the prior anti-SLAPP ruling.

Consistent with its prior interim ruling in December 2014, the trial court did not award attorney fees to defendants under section 2023.030 of the Civil Discovery Act, as defendants had requested in their sanctions motions. Addressing sanctions for VeriPic's misuse of the discovery process pursuant to the Civil Discovery Act, the trial court stated in its July 9, 2015 order that, "[i]n light of the Court's ruling . . . ordering dismissal of VeriPic's claims, the Court declines to award sanctions pursuant to the Discovery Act and Code of Civil Procedure section 2023.030." The trial court's final order on sanctions does not otherwise address or analyze section 2023.030.

In a section of the order titled "Foray's motions," the trial court stated, "For the reasons stated in the Court's December Interim Order, the motion by Defendant Foray for terminating and monetary sanctions against Kwan, VeriPic and Grellas Shah pursuant to section 128.7, and as a misuse of the discovery process, is DENIED." The relevant language in the trial court's December interim order reads: "Defendant Foray also moved for terminating and monetary sanctions against Kwan, VeriPic and Grellas Shah pursuant to Code of Civil Procedure section 2023.030, as a misuse of the discovery process. As to the motion's request for monetary sanctions, the supporting memorandum fails to state any amount sought. More recently, Foray filed a motion for attorney fees with new factual bases for its motion—apparently realizing the original motion's deficiencies—and now seeks $4 million. The initial motion did not reference any such amount. The Court finds that it would not be proper for the Court to order attorney fees incurred by Foray for defense of the Plaintiffs' claims based on the Court's OSC based on fraud on the Court, as such an award could be considered as punishment for the misconduct the Court has found has occurred."

13

Pursuant to the trial court's interim and final sanctions orders, defendants did not receive any of the monetary sanctions they had requested.[5]

E. *Appeals and Judgment*

The parties have filed a number of appeals related to the trial court's rulings in this case. To clarify the scope of our opinion, we set out the procedural history of these appeals.

## 1. Prejudgment Appeals (H042715)

Prior to the issuance of any judgment, a number of the parties filed notices of appeal of the trial court's July 9, 2015 order. On August 6, 2015, VeriPic filed a notice of appeal of the July 9, 2015 order, including the issuance of terminating sanctions. VeriPic filed a notice of abandonment of that appeal in February 2017. On August 7, 2015, Kwan filed a notice of appeal of the portion of the July 9, 2015 order that assessed monetary sanctions against him in the amount of $22,000 payable to the court clerk and the disgorgement of $83,184.33 in attorney fees previously awarded to him and VeriPic. Kwan later filed a notice of abandonment of that appeal. On September 8, 2015, the individual defendants—Hennings, Slaughter, Temple, and Witzke—filed a notice of appeal of the portion of the July 9, 2015 order denying defendants' motion for monetary sanctions against VeriPic, Kwan, and their counsel Grellas Shah LLP. This court assigned a single docket number of H042715 to all of these appeals.

---

[5] On July 20, 2015, defendants moved for reconsideration of the July 9, 2015 order. In their supporting motion, defendants noted that there had been recent developments in Foray's malicious prosecution claims (apparently filed in a separate lawsuit not at issue here) and that, as a result, the "monetary discovery sanctions denied in this Court's Final Order may be Foray's only avenue to recover the attorneys' fees and costs that Foray incurred because of the discovery abuse" of Kwan and VeriPic. The trial court denied the motion for reconsideration, finding that defendants failed to show new or different facts, circumstances or law to justify reconsideration under section 1008. As defendants have not appealed that order or raised any issue as to it here, we do not consider it further.

14

## 2. Postjudgment Appeals (H043215)

Following entry of judgments in November 2015 and January 2016, all of the parties filed notices of appeal. This court assigned case No. H043215 to all the postjudgment notices of appeal.

### a. November 4, 2015 Judgment and Appeals

On November 4, 2015, the trial court entered judgment against plaintiffs and in favor of Foray in the amount of $251,000 to resolve the claims alleged in Foray's cross-complaint. Following entry of judgment, in early January 2016, Kwan and VeriPic separately filed notices of appeal of the judgment and multiple orders, including the July 9, 2015 order. Kwan and VeriPic did not file an abandonment of those appeals in the trial court. On August 28, 2018, this court notified Kwan and VeriPic that their appeals might be dismissed if they did not file an opening brief. Kwan and VeriPic failed to file an opening brief in their appeals from the judgment. They have participated in the appellate proceedings only as a respondent to defendants' appeals of the July 9, 2015 order. Therefore, we conclude Kwan and VeriPic have abandoned any appeal in No. H043215.

Following Kwan's and VeriPic's appeal from the judgment, Foray timely filed a notice of cross-appeal. (See Cal. Rules of Court, rule 8.108(g)(1)). Foray's amended notice of cross-appeal states that it is appealing the July 9, 2015 order "denying Foray's motions for monetary sanctions" against plaintiffs and former plaintiffs' counsel (George Grellas, Dhaivat Shah, and Grellas Shah LLP). Because Kwan and VeriPic have abandoned their own appeals, the sole appeal of the judgment we decide here is Foray's cross-appeal challenging the July 9, 2015 order denying its motions for monetary sanctions.

### b. January 25, 2016 Judgment and Appeals

On January 25, 2016, the trial court entered judgment against VeriPic in favor of the individual defendants Hennings, Slaughter, Temple and Witzke on VeriPic's

complaint. Hennings, Slaughter, Temple, and Witzke timely filed a notice of appeal of that judgment, challenging the portion of the July 9, 2015 order that denied defendants' motion for monetary sanctions against VeriPic, Kwan, and their counsel George Grellas, Dhaivat Shah, and Grellas Shah LLP. On March 10 and March 11, 2016, VeriPic and Kwan filed notices of appeal challenging multiple orders including the July 9, 2015 order. In 2017, VeriPic and Kwan affirmatively abandoned those appeals.

### 3. Scope of our Review

This court previously ordered appeals H042715 and H043215 considered together for the purposes of briefing, oral argument, and decision.[6] Based on the procedural history discussed above, including the multiple abandonments filed by Kwan and VeriPic and their failure to brief their appeals from the judgments, we conclude we have jurisdiction only over the appeals filed by Foray, Hennings, Slaughter, Temple, and Witzke that challenge the trial court's July 9, 2015 order denying defendants' motion for monetary sanctions against VeriPic, Kwan, and former plaintiffs' counsel Grellas Shah LLP and partner Dhaivat Shah.[7] We turn now to the merits of those appeals.

## II. DISCUSSION

Defendants argue the trial court committed two errors in its July 9, 2015 order on sanctions. First, they contend that the trial court abused its discretion when it failed to

---

[6] While the appeals docketed as No. H042715 were prematurely filed, the subsequent judgments issued by the trial court and this court's order considering those prejudgment appeals together with the postjudgment appeals have cured any jurisdictional defect in the prejudgment appeals. (See Cal. Rules of Court, rule 8.104(d)(2).)

[7] Shah began to represent VeriPic and Kwan in the lawsuit around October 2010, well after VeriPic had initiated the lawsuit. In addition to Shah, defendants also sought in their July 2014 motion sanctions against George Grellas, another Grellas Shah LLP partner who was involved at the inception of the lawsuit in 2009 and who supervised the work on the case. In their opening brief, defendants stated that they were abandoning their appeal as to him. Accordingly, we address only their challenge to the denial of sanctions against Dhaivat Shah and Grellas Shah LLP.

16

award any monetary sanctions against plaintiffs Kwan and VeriPic pursuant to section 2023.030, subdivision (a), for misuse of the discovery process.  Second, they assert the trial court erred in deciding defendants were not entitled to any monetary sanctions from former plaintiffs' counsel, who (in defendants' view) advised Kwan and VeriPic to engage in misuse of the discovery process.

A.  *General Legal Principles*

1.  Standards of Review

We review the trial court's sanctions order for abuse of discretion.  As the trial court has broad discretion in selecting sanctions, "we will reverse the trial court only if it was arbitrary, capricious, or whimsical in the exercise of that discretion." (*Department of Forestry & Fire Protection v. Howell* (2017) 18 Cal.App.5th 154, 191 (*Department of Forestry*).)  "A trial court abuses its discretion, however, when its ruling 'rests on an error of law.' " (*People v. Doss* (2014) 230 Cal.App.4th 46, 54.)

"[I]n reviewing the trial court's determination, '[w]e defer to the court's credibility decisions and draw all reasonable inferences in support of the court's ruling.'  [Citation.] To the extent the trial court's decision to issue sanctions depends on factual determinations, we review the record for substantial evidence to support those determinations.  [Citation.]  Thus, our review ' "begins and ends with the determination as to whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support the determination [of the trial court]." ' "  (*Department of Forestry*, *supra*, 18 Cal.App.5th at p. 192.)  " 'To the extent that reviewing the sanction order requires us to construe the applicable discovery statutes, we do so de novo, without regard to the trial court's ruling or reasoning.' "  (*Clement v. Alegre* (2009) 177 Cal.App.4th 1277, 1286.)

17

## 2. Monetary Sanctions Under Section 2023.030 Subdivision (a) of the Civil Discovery Act

Section 2023.030, subdivision (a) (hereafter section 2023.030(a)), of the Civil Discovery Act delineates the trial court's statutory authority to issue discovery sanctions in the form of monetary sanctions.[8]  Section 2023.030(a) states in relevant part:

> "The court may impose a monetary sanction ordering that one engaging in the misuse of the discovery process, or any attorney advising that conduct, or both pay the reasonable expenses, including attorney's fees, incurred by anyone as a result of that conduct.  The court may also impose this sanction on one unsuccessfully asserting that another has engaged in the misuse of the discovery process, or on any attorney who advised that assertion, or on both.  *If a monetary sanction is authorized by any provision of this title, the court shall impose that sanction unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust.*"  (Italics added.)

The last sentence of section 2023.030(a) limits the trial court's discretion to decline to impose monetary sanctions for violations of the discovery rules.  "[M]onetary sanctions, in an amount incurred, including attorney fees, by anyone as a result of the offending conduct, *must be imposed* unless the trial court finds the sanctioned party acted with substantial justification or the sanction is otherwise unjust."  (*Department of Forestry*, *supra*, 18 Cal.App.5th at p. 191, italics added.)

Section 2023.010 sets forth a non-exhaustive list of misuses of the discovery process, stating in pertinent part that misuses of the discovery process include, but are not limited to, "making an evasive response to discovery."  (§ 2023.010, subd. (f).)  Although

---

[8] Defendants' briefing on appeal refers to a different provision of the Civil Discovery Act (section 2030.30), but their briefing quotes the applicable language of section 2023.030.  Moreover, section 2030.30 appears to have no application here because it relates generally to the permissible amount of written interrogatories that a party may propound in discovery.  Defendants' briefing in the trial court focused on section 2023.030, as does respondents' briefing in this court.  We therefore assume defendants' reference to section 2030.30 was an error that did not prejudice respondents and focus our analysis on section 2023.030.

not expressly included in the list of misuses in section 2023.010, courts have held that "[o]ther sanctionable discovery abuses include providing false discovery responses and spoliation of evidence." (*Department of Forestry*, *supra*, 18 Cal.App.5th at p. 191.)

Discovery sanctions serve to remedy the harm caused to the party suffering the discovery misconduct. (*Padron v. Watchtower Bible & Tract Society of New York, Inc.* (2017) 16 Cal.App.5th 1246, 1259.) Because discovery sanctions are not designed to punish, " 'sanctions should be tailored to serve that remedial purpose, should not put the moving party in a better position than he would otherwise have been had he obtained the requested discovery, and should be proportionate to the offending party's misconduct.' " (*Id.* at pp. 1259–1260.)

With these principles in mind we review the trial court's July 9, 2015 order that denied defendants' request for monetary sanctions for plaintiffs' and former plaintiffs' counsel's discovery misconduct.

B. *Sanctions Against Plaintiffs Kwan and VeriPic*

Defendants assert that section 2023.030(a) of the Civil Discovery Act mandates that the trial court impose a monetary sanction for Kwan's and VeriPic's discovery wrongdoing, and the trial court abused its discretion in denying them any monetary sanctions. For the reasons explained below, we agree and remand to the trial court with directions.

As noted above, when the Civil Discovery Act authorizes a monetary sanction, the trial court must impose such a sanction, unless the offending party acted with substantial justification or the imposition of the sanction would be unjust. (§ 2023.030(a); *Department of Forestry*, *supra*, 18 Cal.App.5th at p. 191.) Here, the trial court found that Kwan and VeriPic engaged in egregious litigation conduct that included abuses of the discovery process. In its July 9, 2015 order, the trial court expressly found that Kwan's sworn deposition testimony (along with declarations he filed with the trial court) were false and that VeriPic's "bad faith misconduct" included the "spoliation of evidence."

19

Nevertheless, the trial court concluded that granting defendants' motion for monetary sanctions "could" be considered an act of punishment against plaintiffs and denied defendants' motion seeking the fees and costs they incurred as a result of VeriPic's and Kwan's discovery misconduct.

The trial court's July 9, 2015 order, which contains specific findings that VeriPic and Kwan engaged in extensive and deliberate misconduct, implicitly concludes that neither Kwan nor VeriPic was acting with substantial justification in the course of discovery. Substantial evidence supports that determination. "[T]he phrase 'substantial justification' has been understood to mean that a justification is clearly reasonable because it is well-grounded in both law and fact." (*Doe v. United States Swimming, Inc.* (2011) 200 Cal.App.4th 1424, 1434.) We decide there is no basis in the record to affirm the trial court's order denying monetary sanctions on the grounds that Kwan's or VeriPic's discovery misconduct was substantially justified, and neither Kwan nor VeriPic argue that it was. Therefore, the trial court's refusal to award monetary sanctions turns on the second exception in section 2023.030(a)—namely whether "the imposition of the sanction [would be] unjust."

In general, discovery sanctions may not be imposed as a punishment. "Courts have continued to uphold the principle . . . that sanctions may not be imposed solely to punish the offending party. . . . Furthermore, the sanction chosen should not provide a windfall to the other party, by putting the prevailing party in a better position than if he or she had obtained the discovery sought and it had been favorable." (*Rutledge v. Hewlett-Packard Co.* (2015) 238 Cal.App.4th 1164, 1193; see also *Siry Investment., L.P. v. Farkhondehpour* (2020) 45 Cal.App.5th 1098, 1117, review granted July 8, 2020, S262081 [explaining that "discovery sanctions . . . 'protect the interests of the party entitled to[,] but denied[,] discovery,' not to 'punish[]' the noncompliant party"].)

We recognize that our review of the trial court's sanctions award is deferential, but we must ensure the trial court has followed the applicable statute. (See *Diepenbrock v.*

20

*Brown* (2012) 208 Cal.App.4th 743, 749 [finding sanctions order issued under section 2023.030(a) to be error].) We decide that no substantial evidence in the record supports the trial court's conclusion that imposition of any monetary discovery sanction against Kwan and VeriPic would constitute punishment. While the trial court cited a concern over punishment, a careful reading of its order shows that it imposed no sanctions of any kind on plaintiffs for their discovery abuses, even as the trial court clearly found plaintiffs had engaged in behavior that violated the Civil Discovery Act. The trial court's order granting terminating sanctions was based on plaintiffs' fraud on the court—not on the discovery misconduct they visited on defendants. Similarly, the disgorgement of fees and costs previously awarded was based on principles of restitution for plaintiffs' overall "wrongful conduct" rather than to address or sanction any particular discovery misconduct. Indeed, the trial court never referred to this disgorgement remedy as a form of "sanctions" in either its interim order or in the July 9, 2015 order.

While plaintiffs argue that the trial court may have determined that monetary sanctions were unjust because the trial court had awarded other sanctions pursuant to its inherent authority, they cite no authority for the proposition that the trial court's imposition of other sanctions, such as terminating sanctions, has any bearing on the legal question of whether defendants were also entitled to an award of the compensable fees mandated by section 2023.030(a). Our independent research has also not found any such authority. In addition, the trial court did not reference such a concern in its order denying monetary sanctions.

It appears from the language of the interim order that the trial court may have been concerned with the overall amount of the attorney fees—namely millions of dollars in defense costs—that defendants requested as a sanction for plaintiffs' discovery abuses. For example, the trial court's interim order states that Foray's and Hennings's memorandum supporting its initial request for sanctions under section 2023.030 did not seek monetary sanctions in a specific amount and the subsequent motion (filed after the

21

court's OSC) requested $4 million. The trial court stated "Foray also moved for terminating and monetary sanctions against Kwan, VeriPic and Grellas Shah pursuant to Code of Civil Procedure section 2023.030, as a misuse of the discovery process. As to the motion's request for monetary sanctions, the supporting memorandum fails to state any amount sought. More recently, Foray filed a motion for attorney fees with new factual bases for its motion—apparently realizing the original motion's deficiencies—and now seeks $4 million. The initial motion did not reference any such amount." The trial court decided that "it would not be proper for the Court to order attorney fees incurred by [defendants] for defense of the Plaintiffs' claims based on the Court's OSC based on fraud on the Court, as such an award could be considered as punishment for the misconduct the Court has found has occurred."

Given the record here, we decide the trial court abused its discretion in reaching this conclusion. While the consideration of punishment might well influence the amount of monetary sanctions the trial court should award, it has no bearing on the threshold question of whether defendants were statutorily entitled under section 2023.030(a) to at least some monetary sanctions for the reasonable attorney fees they incurred as a result of Kwan's and VeriPic's misuse of the discovery process. We also note that Hennings's and Foray's initial supporting memorandum of points and authorities dated November 2013, although it did not state a specific amount in sanctions, did generally seek monetary sanctions pursuant to section 2023.030 and contended they had expended millions of dollars due to Kwan's misconduct. In addition, the Greenan Declaration supporting their motion further stated a specific amount (at that time, $3 million) that Foray and Hennings had expended to "defend against VeriPic's claims."

The amount of attorney fees sought by defendants as monetary sanctions, or any discrepancy in the amount sought in the two sanctions motions, do not on these facts satisfy the "unjust" exception to section 2023.030(a). As one treatise notes, the unjust exception "may excuse monetary sanctions where the party to be sanctioned is

22

impoverished and monetary sanctions would cause a hardship disproportionate to the discovery misuse." (Weil & Brown, Cal. Prac. Guide: Civ. Pro. Before Trial (The Rutter Group 2020) § 8:1973.) That circumstance has no application here. While on remand the trial court may well decide not to award the full amount of monetary sanctions requested by defendants, we decide that it was arbitrary and an abuse of its discretion for the trial court to decline to award *any* amount of monetary sanctions in light of its explicit finding that discovery misconduct, in the form of false deposition testimony and spoliation of evidence, had occurred. Applying all presumptions in the trial court's favor and having carefully reviewed the record, we are unable to discern substantial evidence that would render the imposition of monetary sanctions in any amount "unjust" within the meaning of section 2023.030(a).[9]

For these reasons, we reverse the portion of the July 9, 2015 order denying defendants' motion for monetary sanctions under section 2023.030(a). Having concluded defendants are entitled to sanctions for the discovery misconduct found by the trial court—namely, Kwan's false deposition testimony and VeriPic's spoliation of evidence—and that neither the substantial justification nor the "unjust" exception under section 2023.030(a) applies, we remand the matter in order for the trial court to determine the appropriate amount of monetary sanctions to impose. (See § 2023.030(a) ["The court may impose a monetary sanction ordering that one engaging in the misuse of the discovery process . . . pay the reasonable expenses, including attorney's fees, incurred by

---

[9] We have considered Kwan's and VeriPic's argument that the trial court "might" have "ignored" defendants' motion of July 2, 2014, "as procedurally improper." We are not persuaded the record supports the reasonable inference that the trial court viewed the July 2014 motion as improper on procedural grounds or that it prohibited defendants from filing its July 2014 motion. *Cowan v. Krayzman* (2011) 196 Cal.App.4th 907, upon which plaintiffs reply, is distinguishable, including because both the November 2013 and July 2014 motions sought monetary sanctions for plaintiffs' discovery misconduct. We decide there is no basis in the record for VeriPic's and Kwan's claim that the trial court considered the second motion to be unauthorized.

23

anyone as a result of that conduct."].) We direct the trial court to order Kwan and Veripic to pay that amount to defendants as a monetary sanction, and we leave its determination to the trial court's sound discretion.

C. *Sanctions Against Former Plaintiffs' Counsel*

We now turn to defendants' claim for monetary sanctions against former plaintiffs' counsel: the law firm of Grellas Shah LLP and Dhaivat Shah, a partner at the firm. Defendants contend the trial court abused its discretion by refusing to impose monetary sanctions against counsel for advising VeriPic and Kwan in their discovery abuse. On appeal, defendants argue counsel "knew their clients were lying" by February 2012, when David Lai testified and then later changed his testimony and that "[n]onetheless, they advised their clients to continue litigating their claims 'full speed ahead,' without correcting their false discovery responses or preventing further known discovery abuses, and apparently without any investigation to confirm they were not continuing to prosecute claims based on additional misrepresentations and discovery abuses."

Grellas Shah LLP and Shah have filed a joint respondents' brief arguing that the trial court did not abuse its discretion in denying sanctions as to them on due process grounds, and there is no evidentiary basis in the record to support the conclusion that they advised their former clients Kwan and VeriPic to engage in discovery abuse.

We review the trial court's decision whether to impose sanctions on counsel pursuant to section 2023.030(a) for abuse of discretion. (*Ellis v. Toshiba America Information Systems, Inc.* (2013) 218 Cal.App.4th 853, 878.) Defendants have the burden of demonstrating error by the trial court. (*Ibid.*) On appeal, we must affirm the ruling denying the motion for monetary sanctions if it is correct on any theory, even if the trial court's reasoning was erroneous. (*Muller v. Fresno Community Hospital & Medical Center* (2009) 172 Cal.App.4th 887, 906–907.)

### 1. Additional Background

In February 2012, Shah represented third-party David Lai at his first deposition in the lawsuit. David Lai was the former president of BigBiz (VeriPic's Internet service provider during the pertinent time period) and had known Kwan since childhood. Defendants' counsel questioned David Lai about a letter he wrote to VeriPic dated March 12, 2010, in which Lai stated he was writing to "confirm" that BigBiz registered the domain name www. Foray.ca for VeriPic, and that VeriPic "did not ask for traffic to the website domain www.Foray.ca. to be referred to the www.VeriPic.com website." The letter also stated that BigBiz had conducted a "trademark search" and concluded that the registration of that Foray domain was "proper" and "unrestricted" under the authority governing Internet domain registrations. Lai testified at his deposition that he had never conducted a trademark search and had taken this language for his letter from "the Internet."

After this line of questioning, a lunch recess was taken. Following the lunch recess, Shah returned on the record and stated, "During the lunch break it became apparent that there is – there was a material disagreement with the witness and a conflict that will require Mr. Lai to seek separate counsel." On that basis, Shah suspended the deposition.

Shortly thereafter, David Lai submitted an errata sheet dated March 2012 that made substantive changes to his deposition testimony, including altering his testimony to state that Kwan had provided the wording of certain letters, including the March 12, 2010 letter. The errata sheet stated the reason for the changes in his deposition transcript were "arguing among attorneys/confusion/stress." Represented by new counsel, David Lai was deposed again in April 2012. He testified that Kwan had provided a portion (via e-mail) of the March 12, 2010 letter to him. At this second deposition, David Lai stated that Kwan had supplied him with the language that a "trademark search" had been conducted with respect to the use of the Foray name. Lai stated that the search language

25

was "not something that I would probably come up with" and that, in fact, BigBiz did not do a trademark search as represented in the letter.

Following the David Lai depositions, Grellas Shah LLP remained counsel of record for Kwan and VeriPic and participated in subsequent discovery-related matters. For example, in October 2013, Shah sent an e-mail to defendants' counsel confirming he would represent Kwan (as the corporate representative or person most knowledgeable (PMK) for VeriPic) at deposition. In a separate e-mail dated October 24, 2013, Shah wrote to defendants' counsel to confirm that there were "no documents to produce" in response to plaintiffs' request for documents contained in the notice of deposition for the PMK deposition. On January 21, 2014, Kwan appeared for the PMK deposition as a representative for VeriPic, represented at the deposition by Shah. Kwan declined to testify at the deposition and instead asserted his Fifth Amendment privilege.

Prior to the evidentiary hearing in March 2014, Shah submitted a declaration dated December 6, 2013, in which he asserted that VeriPic's counsel did not engage in or encourage the spoliation of evidence. Shah testified at the March 2014 evidentiary hearing on Foray's and Hennings's sanctions motion. Shah stated that he had seen two letters from David Lai, including the March 12, 2010 letter, and that he had also seen the errata sheet completed by Lai. Counsel for Kwan objected on various grounds, including Kwan's Fifth Amendment privilege, to numerous questions posed by defendants' counsel to Shah and Grellas. The trial court sustained a number of those objections. For example, the trial court sustained an objection on Fifth Amendment grounds to the question posed to Shah of whether Shah had contacted either David Lai or Henry Lai to ask them if there were any documents they had that were authored by Kwan.

At the conclusion of the hearing, Shah argued and discussed the evidence that had been admitted at the hearing. Shah argued that the "only thing" Lai had corrected in his deposition was that "Kwan may have given me some part of the language to use in those

26

letters" and contended that there was insufficient evidence for the trial court to conclude Shah was "derelict in [his] duties." The trial court did not comment on Shah's argument.

In September 2014, Grellas Shah LLP and Shah filed an opposition to the July 2014 motion for sanctions. They opposed the sanctions motion on a number of grounds, including that there was no evidence they advised their clients to engage in discovery misconduct. In their briefing, they pointed to evidence they had submitted previously in response to the trial court's OSC. This evidence included a declaration from Shah dated July 23, 2014, in which Shah denied that he had instructed David Lai to "make statements against his interests or in favor of plaintiffs' interests" or "to provide untruthful testimony." Grellas Shah LLP and Shah further argued that nothing in the February 2012 deposition of David Lai put them on notice that Kwan's prior representations on the issue of the direction of domain traffic were false.

Shah asserted in his July 23, 2014 declaration that his firm received Lai's errata sheet in 2012 that reflected a "change in Mr. Lai's prior testimony," but Lai's new testimony reflected in his errata sheet was "not inconsistent with Mr. Kwan's prior testimony" at his deposition because Kwan had testified that "he may have provided some of the wording to Mr. Lai for [the March 2010 BigBiz] letters." Shah did not address the language in the March 2010 letter regarding the trademark search, but rather stated that "the only issue relevant to VeriPic's claims" was that "VeriPic did not direct BigBiz to forward the disputed domains to veripic.com or propictus.com" and that Lai's testimony had remained consistent on that issue.

In addition, in their opposition to the sanctions motion, Grellas Shah LLP and Shah noted that the trial court had ordered them not to testify as to certain questions based on Kwan's assertion of his Fifth Amendment privilege and argued that "due process prevents the Court from imposing monetary sanctions in the form of a fee award against Grellas Shah because the Grellas Shah attorneys' ability to speak on their own behalf and defend against the award of attorney's fees is severely hampered by their

27

ethical duty of confidentiality, the attorney-client privilege and the invocation of the Fifth Amendment privilege by their former client John Kwan."

In its July 9, 2015 order, the trial court adopted Grellas Shah LLP's due process argument and declined on that basis to impose any sanctions on Grellas Shah LLP or its attorneys. The trial court concluded that "due process prevents the Court from imposing sanctions against Grellas Shah and its attorneys because they cannot provide a complete response to the OSC because of the exercise of the Fifth Amendment privilege by their client, John Kwan, and the duty of loyalty owed to their former clients."

### 2. Legal Principles

By the terms of the statute, a trial court under section 2023.030(a) may not impose monetary sanctions against a party's attorney unless the court finds that the attorney "advised" the party to engage in the conduct resulting in sanctions. (§ 2023.030(a); *Ghanooni v. Super Shuttle* (1993) 20 Cal.App.4th 256, 261.) "Unlike monetary sanctions against a party, which are based on the party's misuse of the discovery process, monetary sanctions against the party's attorney require a finding the 'attorney advis[ed] that conduct.' " (*Ibid.*) "It is not enough that the attorney's actions were in some way improper." (*Corns v. Miller* (1986) 181 Cal.App.3d 195, 200 (*Corns*).) Because an attorney's advice to a client is "peculiarly within [his or her] knowledge," the attorney has the burden of showing that he or she did not counsel discovery abuse. (*Ibid.*) Accordingly, when a party seeking sanctions against an attorney offers sufficient evidence of a misuse of the discovery process, the burden shifts to the attorney to demonstrate that he or she did not recommend that conduct. (*Id*. at pp. 200–201; *Ghanooni*, at p. 262.)

### 3. Analysis

We begin with the threshold constitutional due process issue. We understand the due process claim—which Grellas Shah LLP and Shah renew here—to be procedural. In its ruling, the trial court noted that counsel was unable to provide a "complete" defense

28

based on Kwan's invocation of his Fifth Amendment privilege at the March 21, 2014 evidentiary hearing.  We review procedural due process claims de novo because " ' "the ultimate determination of procedural fairness amounts to a question of law." ' " (*Severson & Werson, P.C. v. Sepehry-Fard* (2019) 37 Cal.App.5th 938, 944.)

At its core, due process entitles a person to notice and the opportunity to be heard before a neutral decision-maker.  (*Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 212; *Nightlife Partners, Ltd. v. City of Beverly Hills* (2003) 108 Cal.App.4th 81, 90.)  A court may impose sanctions "after notice to any affected party, person, or attorney, and after opportunity for hearing."  (§ 2023.030.) " 'Adequate notice prior to imposition of sanctions is mandated not only by statute, but also by the due process clauses of both the state and federal Constitutions.' " (*Sole Energy Co. v. Hodges* (2005) 128 Cal.App.4th 199, 208; see also *Barrientos v. City of Los Angeles* (1994) 30 Cal.App.4th 63, 70 [holding that due process mandates adequate notice and opportunity to be heard prior to the imposition of sanctions].)

Mindful of these principles and based on an independent review of the record, we do not agree with the trial court that due process mandated that sanctions be denied against Grellas Shah LLP or Shah individually based on Kwan's invocation of the Fifth Amendment privilege.  In the trial court, Grellas Shah LLP and Shah filed briefs and declarations in their defense, including in response to the trial court's order to show cause, and appeared at the March 21, 2014 hearing to defend themselves against the request that sanctions be imposed on them.  They filed another response to defendants' July 2014 motion.  On this record, we conclude that they received adequate notice and opportunity to be heard on the issue of whether they advised discovery abuse perpetrated by VeriPic and Kwan.  That their former client Kwan chose to invoke his Fifth Amendment privilege as to certain questions posed by defendants' counsel did not preclude the trial court as a matter of due process from deciding whether counsel was liable for discovery sanctions under section 2023.030(a).

29

Having rejected the due process rationale relied upon by the trial court, we next consider the state of the record about the advice on discovery issues given by Grellas Shah LLP and Shah to Kwan and VeriPic. The trial court's order rests exclusively on due process, and the court does not appear to have made any factual findings—either explicitly or impliedly—about whether Grellas Shah LLP or Shah advised plaintiffs to engage in discovery misconduct. Under these circumstances, we independently review the record. (See *Gamma Eta Chapter of Pi Kappa Alpha v. Helvey* (2020) 44 Cal.App.5th 1090, 1098.) We note that appellants bear the burden on appeal of demonstrating error and observe that they have not appealed any of the trial court's evidentiary rulings from the March 21, 2014 hearing on defendants Foray's and Hennings's sanctions motion. There is therefore little evidence in the record about what Grellas Shah LLP and Shah actually advised plaintiffs to do with respect to discovery.

We have carefully examined the evidence that is in the record. Based on that review, we conclude that there is direct evidence that Grellas Shah LLP and Shah did not advise plaintiffs to engage in the misuse of the discovery process, and no substantial evidence undermines that assertion. In a declaration from December 2013 signed under penalty of perjury, Shah asserted that Grellas Shah LLP had not advised Kwan to engage in the conduct with respect to the domain names described in Kwan's May 2010 e-mails. He also stated that Grellas Shah LLP had not instructed VeriPic or Kwan to spoliate any evidence. In his July 2014 declaration, also signed under penalty of perjury, Shah affirmatively stated that he did not instruct David Lai to provide untruthful testimony. He also asserted that Grellas Shah LLP did not withhold from production in discovery any nonprivileged responsive document. Shah stated he had conducted his representation of plaintiffs in this matter "in conformance with the highest ethical standards."

There is therefore substantial evidence in the record that neither Grellas Shah LLP nor Shah advised Kwan or VeriPic to engage in discovery misconduct. The evidence here is unlike that in *Corns*, *supra*, 181 Cal.App.3d 195, where the Court of Appeal held

30

that an attorney had not met his burden of proof in opposing sanctions where the attorney had not submitted any opposition to the motion for sanctions and had not appeared at the hearing on the motion. (*Id*. at p. 201.)

In support of their argument for reversal of the trial court's order, defendants point to various categories of misconduct following the first David Lai deposition in February 2012, such as counsel's involvement in continuing to rely on Kwan's false testimony in declarations to support and oppose dispositive motions, the overall expansion of the scope of litigation by the filing of a fifth, sixth and finally a seventh amended complaint, counsel's failure to supplement or correct prior discovery responses, and their participation in continuing to proffer Kwan as a corporate witness.

As a threshold matter, we are not persuaded that most of the conduct falls under section 2023.030, which is limited to discovery abuses. The propriety of the overall conduct of the litigation by Grellas Shah LLP or Shah is not before us. We express no opinion about whether Grellas Shah LLP's or Shah's conduct amounted to litigation misconduct that might have been appropriately sanctioned pursuant to other authority.

With respect to the conduct cited by defendants that does relate to discovery, we note that defendants do not point to any direct evidence that Grellas Shah LLP or Shah advised Kwan or VeriPic to misuse the discovery process. Rather, we understand defendants to assert that there is evidence in the record from which we may infer that counsel knew in February 2012 that their clients were lying and thereafter engaged in discovery that perpetuated these lies.

For example, defendants' opening brief generally argues that counsel advised plaintiffs to submit "false supplemental discovery responses" but does not explain which responses it is referring to or point to any direct evidence supporting their contention that counsel advised any misuse of discovery. In their reply brief, defendants cite generally to a supplemental declaration from defendants' counsel filed in the trial court that attached VeriPic's and Kwan's responses to supplemental special interrogatory responses dated

31

March 2013. These supplemental discovery responses were verified by Kwan on March 21, 2013, and signed by David Siegel, an attorney from Grellas Shah LLP.[10] There is no evidence based on these responses, even when read in conjunction with the rest of the record, including the excerpts from the David Lai depositions and his errata, that Grellas Shah LLP or Shah knew that Kwan was lying at that point, let alone that they then advised misuse of the discovery process.[11]

Similarly, regarding the proffering of Kwan as a corporate witness for VeriPic in January 2014, approximately two years after the first Kwan deposition in January 2012 and David Lai depositions in 2012, there is no evidence in the record to support defendants' conclusory allegations that counsel advised Kwan to continue to proffer false statements. In their reply brief, defendants reference numerous pages from the trial court's OSC but do not point to any specific finding in the trial court's OSC that Grellas Shah LLP or Shah advised any misuse of the discovery process. There is no evidence in the record about how or what counsel advised plaintiffs with respect to the Kwan PMK deposition. This topic was not explored at the evidentiary hearing on March 21, 2014.

---

[10] David Siegel is not a party in this appeal. He was an associate at Grellas Shah LLP who worked on the matter. The trial court named Siegel in its OSC, as he had made various submissions to the trial court such as declarations. Defendants' motion for sanctions in July 2014 did not specifically seek sanctions against him, and the trial court did not make any specific findings as to him (or any of the other individual attorneys from the firm) in its July 9, 2015 final order.

[11] In their opening brief, appellants pointed to the 2012 David Lai deposition and his errata altering some of his testimony in support of their contention that the attorneys advised abuse of the discovery process. However, in their reply brief and at oral argument, counsel for appellants also argued that the production of documents by David Lai shortly following that deposition also alerted Grellas Shah LLP that Kwan was lying. In particular, appellants referenced documents that showed that VeriPic had registered a large number of domain names and, in their view, demonstrate "Veripic's organized scheme over several years to misdirect internet users." We do not agree that this information about the number of domain names constitutes substantial evidence that either Grellas Shah LLP or Shah knew Kwan was lying, let alone that the attorneys themselves advised misuse of the discovery process.

To the extent that defendants might have been able to develop facts at the evidentiary hearing on the sanctions motion had the trial court overruled Kwan's objections to their testimony, defendants have not appealed those evidentiary rulings.

Section 2023.030(a) by its terms requires a finding that an attorney has advised misuse of the discovery process before monetary sanctions may be imposed. We understand defendants' observation about the difficulty of eliciting direct proof of such conduct in light of an attorney's ethical obligations and privileges protecting attorney-client communications. However, the difficulty of carrying this burden stems from the statute itself, and we lack the authority to ignore its explicit statutory directive.

Given the limited record developed in the trial court, we conclude there is not substantial evidence that either Grellas Shah LLP or Shah advised plaintiffs to engage in the misuse of the discovery process. Therefore, defendants have not persuaded us that the trial court erred in its decision to decline to award monetary sanctions against Grellas Shah LLP and Shah under section 2023.030(a).

### III. DISPOSITION

Kwan's and VeriPic's appeals in No. H043215 are deemed abandoned. In the appeals of Hennings, Slaughter, Temple, and Witzke in Nos. H042715 and H043215 and in Foray's appeal in No. H043215, the portion of the July 9, 2015 order denying defendants' request for monetary sanctions pursuant to Code of Civil Procedure section 2023.030, subdivision (a), is reversed and remanded for further proceedings. The trial court is directed to order monetary sanctions against Kwan and VeriPic in favor of defendants Foray Technologies, LLC, Hennings, Slaughter, Temple, and Witzke for the reasonable expenses, including attorney fees, incurred by them as of result of VeriPic's and Kwan's misuse of the discovery process in an amount to be determined by the trial court. (§ 2023.030, subd. (a).) In all other respects, the judgments are affirmed. In the interests of justice, the parties shall bear their own costs on appeal.

33

_____

Danner, J.

WE CONCUR:

_____

Greenwood, P.J.

_____

Grover, J.

**H042715, H043215**
*Kwan Software Engineering, Inc. et al. v. Foray Technologies, LLC et al.*

| | |
|---|---|
| Trial Court: | Santa Clara County Superior Court<br>No. 109CV149780 |
| Trial Judge: | Hon. Mary Arand |
| Counsel for Defendants/Appellants<br>Thomas Hennings, David Witzke,<br>Michal Temple, Lynn Slaughter:<br><br>**H042715** | Chip B. Cox<br>James Greenan<br>Greenan, Peffer, Saooahder & Lally<br>LLP |
| Counsel for Plaintiffs/Respondents<br>Kwan Software Engineering, Inc,<br>John Kwan: | William Wallace Winters<br>Jim Erickson<br>The Mlnarik Law Group, Inc. |
| Counsel for Objectors/Respondents<br>Grellas Shah LLP and Dhaivat Shah: | Merri A. Baldwin<br>Si Eun Lee<br>Rogers Joseph O'Donnell<br>. |
| Counsel for Plaintiffs/Cross-<br>defendants Kwan Software<br>Engineering, Inc., John Kwan:<br><br>**H043215** | William Wallace Winters<br>Jim Erickson<br>The Mlnarik Law Group, Inc. |
| Counsel for Defendants/Cross-<br>complainants/Appellants Foray<br>Technologies, LLC, David Witzke,<br>Michal Temple, Thomas Hennings,<br>Lynn Slaughter: | Chip B. Cox<br>James Greenan<br>Greenan, Peffer, Saooahder & Lally<br>LLP |
| Counsel for Objectors/Respondents<br>Grellas Shah LLP and Dhaivat Shah: | Merri A. Baldwin<br>Si Eun Lee<br>Rogers Joseph O'Donnell<br>. |

**H042715, H043215**
*Kwan Software Engineering, Inc. et al. v. Foray Technologies, LLC et al.*